**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GOVERNMENT EMPLOYEES INSURANCE CO., GEICO INDEMNITY CO., GEICO GENERAL INSURANCE COMPANY and GEICO CASUALTY CO., <br><br> *Plaintiffs,* <br><br> v. <br><br> WAEL ELKHOLY, M.D., PRECISION PAIN & SPINE INSTITUTE, L.L.C., PRECISION SPINE & SPORTS MEDICINE OF NEW JERSEY, L.L.C., PRECISION ANESTHESIA ASSOCIATES, P.C., ASHRAF SAKR, M.D., FOUAD KARAM, D.C., LUIS RAMIREZ-PACHECO, M.D., LYDIA SHAJENKO, M.D., STUART ATKIN, M.D., MEHRDAD LANGROUDI, M.D., CHANG LEE, M.D., KHALED MORSI, M.D. and MONICA JOHNSON, N.P., <br><br> *Defendants.* | Case No.: 3:21-cv-16255-MAS-DEA <br><br><br><br> ***Oral Argument Requested*** |

---

**BRIEF IN OPPOSITION TO PLAINTIFFS'
MOTION FOR LEAVE TO AMEND COMPLAINT**

---

Andrew Gimigliano
Damian P. Conforti
Mohamed H. Nabulsi
Peter Sepulveda
**MANDELBAUM BARRETT PC**
3 Becker Farm Road, Suite 105
Roseland, NJ 07068
(973) 736-4600
*Attorneys for Defendants*

4896-0697-2985, v. 4

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT .......................................................................................... 1

PROCEDURAL HISTORY ............................................................................................... 1

STANDARD OF REVIEW ............................................................................................... 3

LEGAL ARGUMENT ...................................................................................................... 3

   I.   GEICO'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT IS A BAD FAITH ATTEMPT TO PLEAD AROUND THE COURT'S PRIOR DECISION DISMISSING THE SAME CLAIMS IN FAVOR OF ARBITRATION. ............................ 4

   II.  GEICO's PROPOSED AMENDMENT IS FUTILE BECAUSE NEW JERSEY LAW APPLIES AND REQUIRES ARBITRATION OF GEICO'S CLAIMS. ............................ 7

     A.  New Jersey law applies to all of GEICO's claims. ............................................... 7

       i.  A conflict of law exists between New York and New Jersey. ........................ 9

       ii.  New Jersey has the most significant relationship to the action. .................... 11

CONCLUSION ............................................................................................................... 14

**TABLE OF AUTHORITIES**

*Cases*

*Allstate Ins. Co. v. Mun*, 751 F.3d 94 (2d Cir. 2014) ........................................................ 10

*Alvin v. Suzuki*, 227 F3d 107 (3d Cir. 2000) ................................................................... 3

*Arias v. Figueroa*, 395 N.J. Super. 623 (App. Div. 2007), *certif. denied*, 193 N.J. 223 (2007) ......... 8

*Bigelow v. Virginia* 421 U.S. 809 (1975)........................................................................ 12

*Carley v. Wheeled Coach*, 991 F.2d 1117 (3d Cir. 1993) (Becker, J., concurring and dissenting) ................................................................................................. 5, 7

*Eatough v. Albano*, 673 F.2d 671 (3d Cir. 1982) ............................................................. 12

*Foman v. Davis*, 371 U.S. 178 (1962) ............................................................................ 3

*Fu v. Fu*, 160 N.J. 108 (1999) ...................................................................................... 11

*Gen. Star Nat. Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377 (3rd Cir. 1992) ................................ 7

i

*Goldfish Shipping, S.A. v. HSH Nordbank AG*, 623 F. Supp. 2d 635 (E.D. Pa. 2009), *aff'd*, 377 F. App'x 150, 154 (3d Cir. 2010) .............................................................................. 7

*Gov't Employees Ins. Co. v. Elkholy*, No. 21-CV-6255, 2022 WL 2373917 (D.N.J. June 30, 2022) .......................................................................................................... 2, 4, 5, 6

*Gov't Employs. Ins. Co. v. Stelton Radiology Corp.*, No. 20-CV-18532, 2022 WL 7991093 (D.N.J. Oct. 14, 2022) ............................................................................................. 6

*In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410 (3d Cir. 1997) ............................ 4

*Jallad v. Madera*, 784 F. App'x 89 (3d Cir. 2019) ........................................................... 3

*Klaxon Co. v. Stentor Elec. Mfg Co.,* 313 U.S. 487 (1941) .................................................. 7

*Med. Society of State of N.Y. v. Serio*, 800 N.E.2d 728 (N.Y. 2003) ...................................... 9

*N. Jersey Neurosurgical Assocs., P.A. ex rel. Gil v. Clarendon Nat. Ins. Co.*, 401 N.J. Super. 186 (App. Div. 2008) ......................................................................................... 8, 11, 13

*New Hampshire v. Maine*, 532 U.S. 742 (2001) .............................................................. 5

*Onyiuke v. N.J. State Supreme Court*, 435 F. Supp. 2d 394 (D.N.J. 2006) .................................. 4

*Pfizer Inc. v. Employers Ins. of Wausau*, 154 N.J. 187 (1998) ............................................. 9

*Rolo v. City Investing Co. Liquidating* Trust, 155 F.3d 644 (3d Cir. 1998) ................................ 3

*Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy*, 416 N.J. Super. 418 (App. Div. 2010) ................................................................... 8

*State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 84 N.J. 28 (1980) .................................. 7

*Veazey v. Doremus*, 103 N.J. 244 (1986) ................................................................... 11

**Statutes**

N.Y. Ins. Law § 5106(b) ................................................................................ 9, 10

N.Y. Ins. Law §§ 5101-5109 .............................................................................. 9

**Federal Rules of Civil Procedure**

Fed. R. Civ. P. 15(a) ..................................................................................... 3

**Regulations**

11 N.Y.C.R.R. § 65-1.1(d) ............................................................................... 10

ii

11 N.Y.C.R.R. § 65-3.11(b) .................................................................................................... 9

11 N.Y.C.R.R. § 65-3.11(d) .................................................................................................... 9

N.J.A.C. 13:35 ...................................................................................................................... 12

### *Treatises*

15 *Corbin on Contracts* 79.7 (rev. ed. 2003) ..................................................................... 10

4 *Holmes' Appleman on Insurance* 21.1 (2d ed. 1998) ...................................................... 10

9 *Corbin on Contracts* § 47.1 (2007 ed.) ............................................................................. 8

iii

4896-0697-2985, v. 4

## **PRELIMINARY STATEMENT**

Plaintiffs, Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company's ("GEICO") seek leave to amend their Complaint to evade this Court's prior decision dismissing numerous claims as subject to mandatory arbitration. Permitting GEICO leave to amend at this time would be futile and prejudicial to Defendants because the outcome would not change the Court's prior decision dismissing all but one of GEICO's claims. The arbitrability of the claims that GEICO filed in this action has been decided by this Court under New Jersey law, exactly as both parties argued on Defendants' prior motion. Having lost on the merits under New Jersey law, and with all but one of its causes of action dismissed (16 of 17), GEICO now seek to change the rules of the game by belatedly injecting New York law to avoid the consequences of the Court's prior ruling that compelled arbitration. The Court should reject that attempt and deny GEICO's motion.

## **PROCEDURAL HISTORY**

On August 30, 2021, GEICO filed its Complaint against Defendants asserting seventeen causes of action under New Jersey law. (ECF 1). Attached to the Complaint were three exhibits listing the PIP benefit claims that purportedly served as the basis for the seventeen causes of action. Exhibit 1 listed over 4,000 separate claims allegedly submitted by defendant Precision Pain & Spine Institute LLC ("PPSI"). (ECF 1-1). Exhibit 2 listed over 15,000 separate claims allegedly submitted by defendant Precision Spine & Sports Medicine LLC ("PSSM"). (ECF 1-2). And Exhibit 3 listed nearly 3,000 separate claims allegedly submitted by defendant Precision Anesthesia Associates LLC ("PAA"). (ECF 1-3).

On November 8, 2021, Defendants moved to dismiss all seventeen causes of action and compel arbitration. (ECF 27). Defendants argued, among other things, that all of GEICO's claims were statutorily and contractually arbitrable under New Jersey law, including GEICO's New

1

Jersey Insurance Fraud Prevention Act ("IFPA") claim. (*See* ECF 27-1). On November 22, 2021, GEICO opposed the motion. (ECF 28). In its opposition brief, GEICO argued that none of its causes of action were arbitrable under New Jersey law. (*See id.*). GEICO never asserted that any of its causes of action or the underlying PIP claims were controlled by New York law. (*See id.*). Defendants replied. (ECF 29). And in GEICO's supplemental letter on the motion, it continued to argue New Jersey law. (ECF 39).

On June 30, 2022, the Court granted in part, and denied in part, Defendants' motion to dismiss and compel arbitration. *Gov't Employees Ins. Co. v. Elkholy*, No. 21-CV-6255, 2022 WL 2373917 (D.N.J. June 30, 2022); (ECF 47). Unsurprisingly, the entirety of the Court's decision is based on New Jersey law. *See id.* The Court dismissed all of GEICO's claims as either statutorily or contractually arbitrable, except for the IFPA claim, which it held was not arbitrable. *Id.* at 12. In other words, all of GEICO's causes of action based on the over 22,000 combined PIP claims (ECF 1-2 to 1-3) were dismissed and compelled to arbitration, except for the IFPA claim.[1] On July 29, 2022, Defendants filed their Answer to the IFPA claim. (ECF 51).

On September 12, 2022—over a year after it filed the Complaint, approximately ten months after the motion to dismiss briefing, and approximately two months after the Court's decision— GEICO filed this motion for leave to file an Amended Complaint. (ECF 53). For the first time, after more than a year and after litigating its claims under New Jersey law, GEICO suddenly asserts that its proposed Amended Complaint "simply makes clear that Defendants submitted many" of the PIP claims at issue "in New York" under "New York PIP insurance Policies and the New York PIP insurance laws" for services rendered to "New York-based insureds." GEICO Br. at 1-2 (ECF 53-1). As an end-run around the Court's dismissal order, GEICO posits that the proposed Amended

---

[1] It is notable that, to date, GEICO has not sought to arbitrate those claims.

Complaint "reasserts" its RICO, fraud, unjust enrichment, and declaratory judgment claims" under New York law, which, it claims, are not arbitrable. *Id.* at 2. Defendants now oppose.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). The decision whether to grant or deny a motion for leave to amend "rests within the sound discretion of the district court." *Rolo v. City Investing Co. Liquidating* Trust, 155 F.3d 644, 654 (3d Cir. 1998).

While leave to amend is generally granted freely, it should be denied for "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962) (emphasis added); *Alvin v. Suzuki*, 227 F3d 107, 121 (3rd Cir. 2000); *see also Jallad v. Madera*, 784 F. App'x 89, 95 (3d Cir. 2019) (denying leave to amend when all facts required to plead additional claim were available before filing original complaint two years prior). Here, the Court should deny GEICO's motion for leave to amend because it is made in bad faith, there has been undue and unexplained delay, and the amendment is ultimately futile.

## LEGAL ARGUMENT

GEICO argues that the RICO, common law fraud, unjust enrichment, and declaratory judgment counts previously adjudicated and dismissed by this Court (ECF 46-47) should be resurrected and tried under an entirely new set of rules. Having initiated this action in New Jersey District Court, alleging violations of New Jersey statutes and regulations, and arguing in opposition to Defendants' motion to dismiss on the basis of New Jersey law, GEICO now looks to change the rules. GEICO seeks, to apply New York law to the claims regarding alleged New York insureds, for the admitted reason of "providing a basis to reassert GEICO's RICO, fraud, unjust enrichment,

3

and declarative judgment claims against the Defendants" in an undisguised effort to nullify the Court's June 30, 2022, Order dismissing all but one of the causes of action in favor of arbitration. GEICO's procedural maneuvering is made in bad faith and provides a clear and sufficient basis to deny this motion to amend the complaint.

Further, GEICO's motion for leave to amend the complaint is futile. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Securities Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *see also Onyiuke v. N.J. State Supreme Court*, 435 F. Supp. 2d 394, 403 (D.N.J. 2006) ("An amendment is considered futile 'if the amendment will not cure [any] deficiency in the original complaint or if the amended complaint cannot withstand a motion to dismiss.'"). In the present case, as New Jersey law applies to all claims regardless of the state where the policy was purchased, GEICO's proposed amendment is futile.

## I.   GEICO'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT IS A BAD FAITH ATTEMPT TO PLEAD AROUND THE COURT'S PRIOR DECISION DISMISSING THE SAME CLAIMS IN FAVOR OF ARBITRATION.

In its decision on Defendants' motion to dismiss, the Court expressly resolved that New Jersey law and the arbitration clause in the New Jersey Decision Point Review Plan ("DPRP" or "Plan") applied to the causes of action brought by GEICO that were based on the 22,000-plus allegedly fraudulent underlying PIP benefit claims. *Elkholy*, 2022 WL 2373917, at *1-12; (ECF 1, ECF 1-1 to 1-3). GEICO chose the particular causes of action and PIP claims to include in its Complaint. GEICO chose to bring this case in the United States District Court for the District of New Jersey. And, most importantly, GEICO chose to oppose Defendants' motion to dismiss by arguing that New Jersey law and the DPRP governed and applied to all of its causes of action that were based on the 22,000-plus underlying PIP claims. (*See* ECF 28, 39). The Court has now ruled—in this New Jersey lawsuit, against New Jersey medical practitioners, where GEICO argued

4

only New Jersey law—that New Jersey law and the DPRP apply to GEICO's causes of action and the thousands of underlying PIP claims on which the causes of action were based, and thus dismissed them to arbitration. *See Elkholy*, 2022 WL 2373917, at \*1-12.

GEICO's motion for leave to file an amended complaint is brought in bad faith as a not-so-veiled attempt to circumvent the Court's prior decision. The Court already decided that GEICO's causes of action predicated on the thousands of PIP claims identified in the exhibits to the Complaint were arbitrable under New Jersey law and the New Jersey DPRP, except for the IFPA claim, which it held was not arbitrable under New Jersey law. *See Elkholy*, 2022 WL 2373917. GEICO affirmatively argued that New Jersey law and the DPRP governed arbitrability and, in substantial part, lost its argument that the claims were not arbitrable. (ECF 28, 39). Indeed, GEICO also convinced the Court that the IFPA claim—a New Jersey statute—applied to all of the claims and was not arbitrable. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (explaining that judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase").

Succinctly, by its prior conduct on the motion to dismiss, GEICO waived and is judicially estopped from now arguing that New York law applies to any of the underlying PIP claims and the causes of action based thereon that were already compelled to arbitration by this Court. *See Carley v. Wheeled Coach*, 991 F.2d 1117, 1133-34 (3d Cir. 1993) (Becker, J., concurring and dissenting) (explaining that a party is judicially estopped from arguing one jurisdiction's law applies to the claims only after it argued on a prior motion that a different jurisdiction's law applied to those claims, but application of that law was not to the party's benefit).

The *Elkholy* decision now controls, and GEICO cannot use an amended pleading to circumvent the decision to reanimate its RICO, fraud, unjust enrichment, and declaratory judgment

5

claims that were already compelled to arbitration. Importantly, GEICO does not contend that its proposed Amended Complaint is adding new underlying PIP claims from New York insureds on which its proposed new causes of action are based and does not attempt to specifically identify any such PIP claims either in its Brief or in the proposed Amended Complaint and the exhibits attached thereto. *See* GEICO Br. at 1-11; (ECF 53-4 ¶¶ 1-517 (redlined proposed Amended Complaint)). To the contrary, GEICO expressly states that the proposed Amended Complaint "simply makes clear" that many of the PIP claims submitted were for New York insureds under New York policies, confirming that this motion for leave to amend is merely an attempted end-run around the Court's decision. GEICO Br. at 1-2.

Plainly, GEICO is not pleased with the Court's decision about the arbitrability of its claims and is, therefore, trying to get another bite at the apple in the circuitous and improper route—which is just the newest branch of its ever-morphing strategy to avoid arbitration of its claims. *See, e.g.*, *Elkholy*, 2022 WL 2373917, at *8 (rejecting GEICO's attempt to raise an issue at the eleventh hour about the validity of the assignment of benefits forms for each claim to avoid arbitration); *Gov't Employs. Ins. Co. v. Stelton Radiology Corp.*, No. 20-CV-18532, 2022 WL 7991093, at *6 (D.N.J. Oct. 14, 2022) (rejecting same argument by GEICO which came "out of left field"). GEICO cannot now "reassert"—to use GEICO's own terminology—its RICO, fraud, unjust enrichment, and declaratory judgment claims in an amended pleading. *See* GEICO Br. at 2, 6, 8, 9. GEICO's motion to reanimate these claims smacks of procedural gamesmanship, bad faith, and a total disregard for the Court's the parties' time and resources. It is already settled in this case that New Jersey law applies to GEICO's causes of action and underlying PIP claims, which were compelled to arbitration by the Court and, on the remaining IFPA claim, GEICO convinced the Court it applied and was not arbitrable. In the interest of finality, judicial economy, and adherence to procedural

rules, GEICO should be foreclosed from now arguing otherwise. *See Goldfish Shipping, S.A. v. HSH Nordbank AG*, 623 F. Supp. 2d 635, 640-41 (E.D. Pa. 2009), *aff'd*, 377 F. App'x 150, 154 (3d Cir. 2010); *see also Carley*, 991 F.2d at 1133-34.

On these bases alone, the Court should deny GEICO's motion for leave to amend to now belatedly assert that New York law applies.

## II. GEICO's PROPOSED AMENDMENT IS FUTILE BECAUSE NEW JERSEY LAW APPLIES AND REQUIRES ARBITRATION OF GEICO'S CLAIMS.

Assuming, even for the sake of argument, that the Court finds that the preceding arguments do not procedurally bar GEICO from repleading causes of action under New York law, the proposed amended complaint fails on its merits. GEICO argues that New York law must be applied to alleged "New York" PIP claims, and therefore, arbitration is improper—without addressing which state maintains the greater interest in the matter.  That analysis, however, reveals that the overwhelming interests of New Jersey outweigh the alleged fact that policies were issued in New York.

### A. New Jersey law applies to all of GEICO's claims.

*Klaxon Co. v. Stentor Elec. Mfg Co.* provides that a federal court must apply the choice of law rules of that court's jurisdiction. 313 U.S. 487, 496 (1941); *Gen. Star Nat. Ins. Co. v. Liberty Mut. Ins. Co.*, 960 F.2d 377, 379 (3rd Cir. 1992) ("As this is a diversity case, we apply the forum state's choice of law rule.").  Generally, the law of the place of the contract governs the determination of rights and liabilities of the parties, unless "the dominant and significant relationship of another state to the parties and the underlying issue" provides otherwise. *State Farm Mut. Auto. Ins. Co. v. Estate of Simmons*, 84 N.J. 28, 37 (1980). It is indisputable that New Jersey's choice of law rules apply to this District of New Jersey action. Further, New Jersey has a dominant and significant relationship to the claims because Defendants' facilities are in New Jersey, and all of the medical services were provided in

7

New Jersey, giving New Jersey the most significant relationship to the parties and the underlying issues. (AC ¶¶ 12-29).

Here, in the first instance, GEICO relies on the alleged provision in New York no-fault insurance policies that states: "The policy and any amendment(s) and endorsement(s) are to be interpreted pursuant to the laws of the state of New York." But that contractual provision is irrelevant to the governing law in this matter. Providers are not parties to the underlying insurance contracts/policies. Under the operative assignment of benefits forms from the GEICO insureds to the Defendant New Jersey medical providers, the providers received a full assignment of the benefits under the insurance policies, but do not assume the obligations under the New York policies. *Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy*, 416 N.J. Super. 418 (App. Div. 2010). The assignment of a contract right does not also delegate its duties. 9 *Corbin on Contracts* § 47.1 (2007 ed.). The assignment of benefits in the present matter transferred to the medical providers right to seek and receive payment under the GEICO insurance policy, but it does not serve to bind the provider to the choice of law provision in the New York insurance contract/policy.

In New Jersey, a choice-of-law analysis includes the government-interest analysis, which is "designed to result in application of the law of the state with the most significant interest in resolving the issue presented." *Arias v. Figueroa*, 395 N.J. Super. 623, 625 (App. Div. 2007), *certif. denied*, 193 N.J. 223 (2007).  The analysis consists of two prongs: (i) whether an actual conflict of law exists, and (ii) an evaluation of which state has the most significant relationship to the action.  *N. Jersey Neurosurgical Assocs., P.A. ex rel. Gil v. Clarendon Nat. Ins. Co.*, 401 N.J. Super. 186, 191-94 (App. Div. 2008).

8

### i. A conflict of law exists between New York and New Jersey.

A decision on choice of law is necessary "only . . . when the laws of the involved states differ on the point in issue." *Pfizer Inc. v. Employers Ins. of Wausau*, 154 N.J. 187, 199 (1998). Here, both New Jersey and New York strongly favor arbitration. Indeed, New Jersey maintains strong principals grounded in the arbitration of PIP disputes, and even more so when the arbitration clause is extremely broad, requiring arbitration of "any" disputes "arising out of or relating to" the insurance contract as is the case here.

Similarly, New York has the Comprehensive Automobile Insurance Reparations Act ("CAIRA"), N.Y. Ins. Law §§ 5101-5109, which was enacted to "ensure prompt compensation for losses incurred by accident victims without regarding to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists." *Med. Society of State of N.Y. v. Serio*, 800 N.E.2d 728, 731 (N.Y. 2003). Like in New Jersey, an insured may assign their benefits directly to providers of health care services for the provider to receive direct payment from the insurer. 11 N.Y.C.R.R. § 65-3.11(b). New York's Mandatory Personal Injury Protection Endorsement provisions provide specifically that "[i]n the event <u>any person</u> making a claim for first-party benefits and the [Insurance] Company do not agree regarding <u>any matter relating to the claim</u>, such person <u>shall</u> have the option of submitting such disagreement to arbitration." *Id.* § 65-3.11(d) (emphasis added.). New York's insurance laws further provide that:

> Every insurer <u>shall</u> provide a claimant with the option of submitting <u>any dispute</u> involving the insurer's liability to pay first party benefits, or additional first party benefits, the amount thereof or any other matter which may rise pursuant to subsection (a) of this section to arbitration . . .

N.Y. Ins. Law § 5106(b) (emphasis added.).

9

4896-0697-2985, v. 4

Through this broad language, the legislative intent of New York is unquestionably the same as New Jersey: arbitration is the favored forum to adjudicate disputes relating to PIP claims and requires the claimant be presented with the option to seek it.

New York and New Jersey differ, however, on whether disputes are subject to arbitration after a PIP claim is paid out. While New Jersey statutes and case law permit, and even require, a claim to be arbitrated whether before or after it is paid by the insurer, in New York, an "arbitrable dispute is one between the insurance company and a person making a claim for first-party benefits." *Allstate Ins. Co. v. Mun*, 751 F.3d 94, 98 (2d Cir. 2014) (citing 11 N.Y.C.R.R. § 65-1.1(d)). "Like the policy wording, § 5106(b) appears broad. It provides a right to arbitrate *any* dispute involving the insurer's liability to pay first party benefits. Critically, however, § 5106(b) provides such an arbitration right only to a claimant . . . Claimant is not defined in the statute but necessarily references a person who claims something—here, first party benefits." *Id.* "Section 5106(b)'s arbitration right therefore applies only to disputes arising from the insurer's non-payment during the initial 30-day claims process, not to insurer fraud suits brought later." *Id.*

An actual conflict exists regarding an insurance contract when there is a conflict in the way each state interprets the policy, (*see* 4 *Holmes' Appleman on Insurance* 21.1 (2d ed. 1998)) or when it would violate the public policy of the forum state to apply the law of the jurisdiction where the contract was formed. *See* 15 *Corbin on Contracts* 79.7 (rev. ed. 2003). Due to the differences in the states' statutory language, there is a conflict of law as to whether disputes regarding claims for "New York" insureds stemming from a New Jersey provider may be arbitrated after they have been paid out by the insurer. As such, the choice of law analysis turns on whether New Jersey or New York has a more significant relationship to the claims.

10

4896-0697-2985, v. 4

### ii. New Jersey has the most significant relationship to the action.

In looking to which State has the most significant relationship to this action, there must be an identification of the "governmental policies underlying the law of each state and how those policies are affected by each state's contacts to the litigation and to the parties." *Fu v. Fu*, 160 N.J. 108, 119 (1999) (concluding that New Jersey law controlled because individuals resided in New Jersey and policy was issued and treatment provided for took place in New Jersey, and only accident occurred in New York) (quoting *Veazey v. Doremus*, 103 N.J. 244, 248 (1986)). "The general factors to consider include: (1) the needs of the interstate system, (2) the relevant policies of the forum, (3) the relevant policies and relative interests of the States interested in the determination of the issue, (4) the protection of justified expectations, (5) the basic policies underlying the particular field of law, (6) the promotion of certainty, predictability, and uniformity of result, and (7) ease in the determination and application of the law to be applied." *N. Jersey Neurosurgical Assocs.*, 401 N.J. Super. at 194.

Here, an analysis of these factors finds that New Jersey has the more significant interest to this action and, therefore, New Jersey law must apply to all of the claims for payment and the causes of action pled by GEICO. Based on the allegations in GEICO's proposed Amended Complaint, the issues here stem from the conduct of New Jersey practitioners who provided services solely at their New Jersey locations, and subject to New Jersey laws and regulations. (AC ¶¶ 12-29). As such, it cannot be said that New York would have the dominant interest or right in addressing allegations of wrongful conduct by those New Jersey entities.

A reading of GEICO's proposed Amended Complaint reveals the significant interest of New Jersey. Each of the ten individual defendants are residents of the State of New Jersey. (*See* AC ¶¶ 12-29). Each of the ten individual defendants are professionally licensed by the State of New Jersey. *Id.* All of the services underlying the disputed claims were rendered in New Jersey, at New Jersey

11

offices and ambulatory surgical centers, etc.  There are three business entities named in the proposed Amended Complaint. Each of the three business entities are physically located in the State of New Jersey. (AC ¶¶17, 19, 21). These three business entities were formed under the laws and regulations of the State of New Jersey and, therefore, are regulated by the State of New Jersey.  *See* N.J.A.C. 13:35; www.njconsumeraffaris.gov/bme/pages/faq.

Critically, the proposed Amended Complaint asserts that Defendants were not eligible to receive PIP benefits because they did not comply with all significant laws and regulations governing healthcare practice in **New Jersey**.  (AC ¶ 42) (emphasis added).  The regulations and statutes cited by GEICO in the Amended Complaint are largely New Jersey regulations and statutes. (AC ¶¶41-62).

Plaintiffs seek to apply New Jersey law to patient referrals (AC ¶¶ 46-47), New Jersey law regarding medical necessity (AC ¶ 55), New Jersey law regarding organizational structure (AC ¶ 45) and New Jersey Board of Medical Examiners' regulations prohibiting kickbacks, and to claim broadly that the services, provided in the State of New Jersey by New Jersey practitioners, were fraudulently performed.

There is significant interest to the State of New Jersey in having the laws enacted by the New Jersey legislature and regulations promulgated by its regulatory agencies followed.  It is of interest to the State of New Jersey, and not the State of New York, that health care providers licensed by the State of New Jersey follow the laws and regulations of the State of New Jersey.  Similarly, it is utmost interest to the State of New Jersey that medical treatments provided within the geographic borders of the State of New Jersey are performed in accordance with the laws of the State of New Jersey. *Eatough v. Albano*, 673 F.2d 671, 673-76 (3d Cir. 1982); *Bigelow v. Virginia* 421 U.S. 809, 827 (1975).

12

Additionally, to apply New York law to a New Jersey medical practice would not promote certainty, predictability, or uniformity of results because a New Jersey medical practice would then be subject to the laws of any state in which a patient's policy is issued even when the patient unilaterally chooses to obtain a service in New Jersey. Such application of other states regulations to a health care provider simply on the basis that the patient seeking medical treatment purchased their automobile insurance policy in another state would be a slippery slope that could result in apprehension on the part of New Jersey medical providers to provide services to residents of other states in that, by doing so, they would subject themselves laws that are stricter than or may conflict with the laws of their home state.  It would be overly burdensome for a New Jersey practitioner to research and make any determination regarding whether he/she is in compliance with the regulations of the medical board of, for instance, the State of Oregon before offering treatment to an individual who purchased an insurance policy in Oregon.

Additionally, this would force a New Jersey practitioner to adopt an inordinate number of and varying systems, policies, procedures and protocol for treating their patients, and adjudicating their claims based merely on the state in which the policy insuring the relevant patient was issued. A New Jersey practitioner, licensed and governed by the regulations of the State of New Jersey, who provides services in the State of New Jersey, should be able to apply a uniform system, policies, procedures and protocols in the treatment of their patients and in  adjudicating their claims with carriers and have some level of certainty that the laws of their home state, and not the laws of any foreign state, will apply in the event they are alleged to have fraudulently performed such services in New Jersey.

Medical providers who conduct treatments within the State of New Jersey "reasonably expect payment in accordance with New Jersey law." *N. Jersey Neurosurgical Assocs.*, 401 N.J. Super. at 197. Similarly, medical providers also reasonably expect to be governed by their own State—not

13

those of another state in which they have not subjected themselves to jurisdiction. This same logic can be applied to New York residents who seek treatment in New Jersey: they reasonably expect payments to be made in accordance with New Jersey laws, where the service was rendered. These allegations demonstrate that New Jersey has the most significant interest in the issues at bar.

Finally, because the Defendant entities have no contacts with New York, the basic policies underlying, determining, and applying the relevant laws herein all favor New Jersey.  Therefore, the instant conflict of law issue should be settled in favor of New Jersey law, and must therefore, apply the No-Fault Law and the DPRP's arbitration clause to Defendants' claims regardless of whether the insureds are from New York or New Jersey. As such, consistent with this Court's Order on Defendants' Motion to Dismiss, the Court should deny GEICO's motion for leave to amend the complaint based on futility. New Jersey law applies to all of the claims and requires that the RICO, fraud, unjust enrichment, and declaratory judgment claims to be arbitrated, as the Court already determined when it dismissed those claims and compelled arbitration.

## CONCLUSION

For the foregoing reasons, this Court should deny GEICO's Motion for Leave to Amend, in its entirety.

Respectfully submitted,

**MANDELBAUM BARRETT PC**

*/s/ Damian P. Conforti*
Damian P. Conforti
Andrew Gimigliano
Mohamed H. Nabulsi
Peter Sepulveda

Dated: October 17, 2022

14

4896-0697-2985, v. 4