**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

GOVERNMENT EMPLOYEES
INSURANCE CO., *et al.*,

        Plaintiffs,

v.

WAEL ELKHOLY, M.D., *et al.*,

        Defendants.

Civil Action No. 21-16255 (MAS) (JTQ)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

    This matter comes before the Court on a Motion to Stay Pending Arbitration by Defendants Precision Pain & Spine Institute, LLC ("Precision Pain"), Precision Spine & Sports Medicine of New Jersey, LLC ("Precision Spine"), Precision Anesthesia Associates, PC ("Precision Anesthesia"), Wael Elkholy, M.D. ("Elkholy"), Ashraf Sakr, M.D. ("Sakr"), Fouad Karam, D.C. ("Karam"), Luis Ramirez-Pacheco, M.D. ("Ramirez-Pacheco"), Lydia Shajenko, M.D. ("Shajenko"), Stuart Atkin, M.D. ("Atkin"), Mehrdad Langroudi, M.D. ("Langroudi"), Chang Lee, M.D. ("Lee"), Khaled Morsi, M.D. ("Morsi"), and Monica Johnson, N.P. ("Johnson") (collectively, "Defendants"). (ECF No. 106.) Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company, and GEICO Casualty Co. (collectively "Plaintiffs" or the "Geico Entities") opposed (ECF No. 107), and Defendants replied (ECF No. 108). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1(b). For the reasons below, the Court grants Defendants' Motion.

I.  **BACKGROUND**

    A.  **Factual Background**

This case is about the relationship between healthcare providers and the insurance companies that pay those providers for treating patients for injuries arising from automobile accidents. (*See generally* Am. Compl., ECF No. 72.) Plaintiffs allege against Defendants a series of fraudulent schemes, including unlawful compensation in exchange for patient referrals; misrepresentation of the nature, extent, and results of patient examinations; and false representations regarding compliance with pertinent healthcare laws. (*See id.*)

In 2016, Precision Pain, Precision Anesthesia, and Precision Spine (collectively, the "Precision Facilities") were founded. (*Id.* ¶¶ 17, 19-22.) Elkholy, Sakr, and Karam were the primary owners and members of those facilities, and the other characters involved are straightforward: several New Jersey medical doctors, nurse practitioners, and other healthcare providers—Ramirez-Pacheco, Shajenko, Atkin, Langroudi, Lee, Morsi, and Johnson—who performed various medical procedures at the Precision Facilities over the years. (*Id.* ¶¶ 12-29.) These medical procedures included patient examinations, pain management injections, X-ray testing, chiropractic treatment, physical therapy treatment, and anesthesia services. (*Id.* ¶ 1.)

After the Precision Facilities opened, they began treating patients, some of whom were involved in automobile accidents. (*Id.* ¶ 2.) And among that subgroup of patients, several of them were insured by the Geico Entities. (*Id.*) So, under New Jersey and New York's PIP Benefits programs, Defendants submitted bills to the Geico Entities and other insurance companies directly for the medical services they provided the insured patients. (*E.g., id.* ¶ 30.) That is, prospective patients insured through the Geico Entities would visit Defendants' facilities, provide insurance paperwork to Defendants assigning their rights to PIP Benefits, and in return Defendants would treat the patients. (*See generally id.*)

In essence, Plaintiffs allege that Defendants hatched a plot to scheme the Geico Entities and other insurance companies out of millions of dollars in PIP Benefits. (*Id.* ¶¶ 1-2.) According to the Geico Entities, Defendants engaged in the following illegal conduct: (1) performed medical procedures that were not medically necessary; (2) billed for medical services that were never provided; (3) misrepresented and exaggerated the types of medical services rendered; (4) received unlawful kickbacks in exchange for patient referrals; (5) engaged in unlawful self-referrals; and (6) engaged in the unlawful practice of medicine based on the healthcare providers' corporate structure. (*Id.* ¶¶ 1-2; *see id.* ¶¶ 88-446 (referencing Am. Compl. Exs. 1, 2, 3, ECF Nos. 72-1, 72-2, 72-3).)

B.   **Procedural History**

On August 30, 2021, after the Geico Entities discovered the illegal conduct (*see id.* ¶ 403), they filed suit. (*See generally id.*) Through seventeen counts, they raise essentially four types of claims: (1) violation of the Insurance Fraud Protection Act ("IFPA") (*id.* ¶¶ 408-11); (2) common law fraud (*id.* ¶¶ 426-40, 461-75, 496-510); (3) violation of the Racketeering Influenced and Corrupt Organizations Act ("RICO") (*id.* ¶¶ 412-25, 447-60, 482-95); and (4) unjust enrichment (*id.* ¶¶ 441-46, 476-81, 511-16). Ultimately, the Geico Entities seek $7.1 million in recovery for payments made on more than 20,000 of Defendants' allegedly fraudulent PIP claims, punitive damages, treble damages, costs, and attorney's fees. (*Id.* ¶ 517.) Additionally, the Geico Entities seek a declaratory judgment that Defendants have no right to receive reimbursement for the outstanding charges that they have submitted to Geico under New York automobile insurance policies, seeking reimbursement under the New York no-fault insurance law, because of the alleged fraudulent and unlawful activities. (*Id.* ¶ 4.)

On June 30, 2022, the Court granted in part and denied in part Defendants' motion to compel arbitration of all claims of the complaint. (Mem. Op., ECF No. 46.) The Court granted

Defendants' motion to compel arbitration of Plaintiffs' RICO, fraud, and unjust enrichment causes of action but denied it as to the IFPA cause of action. (*See generally* Mem. Op.) Shortly after, Defendants answered the complaint (ECF No. 51), and Plaintiffs subsequently filed a motion for leave to file an amended complaint (ECF No. 53). Then, on November 17, 2022, Defendants moved to compel arbitration of the IFPA claim and for judgment on the pleadings. (ECF No. 63.) While Defendants' motion was pending, the Court granted Plaintiffs' motion for leave to file an amended complaint on April 25, 2023. (ECF No. 71.)

Plaintiffs filed their Amended Complaint the next day. (Am. Compl.) The Amended Complaint largely sets forth the same substantive allegations as the original complaint. (*Id.*) The Amended Complaint, however, makes changes to the PIP claims. (*See generally id.*) In the original complaint, Plaintiffs' allegations for the IFPA claim were based only on New Jersey PIP claims (*see generally* Compl., ECF No. 1), but the Amended Complaint now predicates the IFPA claim on both New Jersey PIP claims and New York PIP claims (Am. Compl. ¶¶ 6-7, 409). More specifically, the IFPA claim is based on 19,774 New Jersey PIP claims and 2,498 New York PIP claims. (*See* Am. Compl. (referencing Am. Compl. Exs. 1, 2, 3).) Like the original complaint, the Amended Complaint asserts RICO, fraud, unjust enrichment, and declaratory judgment claims but is now based on only the 2,498 New York PIP claims.[1] (*Id.* ¶¶ 404-407, 412-516.)

After Plaintiffs filed their Amended Complaint, the Court *sua sponte* dismissed Defendants' motion to compel arbitration of the IFPA claim and for judgment on the pleadings because the motion was based on an inoperative complaint—the original complaint. (Text Order, ECF No. 76.) In turn, Defendants filed an interlocutory appeal of the text order dismissing its

---

[1] The Amended Complaint was the first time Plaintiffs asserted New York PIP-based claims. (*Compare* Compl. *with* Am. Compl.)

4

motion. (Notice of Appeal, ECF No. 79.) On April 26, 2024, the Third Circuit Court of Appeals issued a written decision "remand[ing] with instructions to compel arbitration of [Plaintiffs'] IFPA claim[] against . . . [Defendants]." *Gov't Emps. Ins. Co. v. Mount Prospect Chiropractic Ctr., P.A.*, 98 F.4th 463, 473 (3d Cir. 2024). Following the Third Circuit's mandate, the Court compelled arbitration of Plaintiffs' IFPA claim and directed Defendants to move to stay the case concerning the non-arbitrable claims. (ECF No. 105.) Defendants moved to stay the entirety of the case. (ECF No. 106.) Plaintiffs opposed (ECF No. 107), and Defendants replied (ECF No. 108). The instant motion is now ripe.

## II. **LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq.*, authorizes federal courts to compel arbitration and stay proceedings pending arbitration. The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable . . . ." 9 U.S.C. § 2. The statute "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 522 (3d Cir. 2009) (citing *Harris v. Green Tree Fin.*, 183 F.3d 173, 178-79 (3d Cir. 1999)). The Third Circuit has long recognized that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language . . . or an allegation of waiver, delay, or a like defense to arbitrability." *Id.* at 24-25. The "unmistakably clear congressional purpose" behind the FAA is "that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." *Prima Paint*

*Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). Courts, therefore, cannot delve into the merits of an arbitrable dispute; their jurisdiction is limited to staying the civil action and compelling the parties to arbitrate. *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 136-37 (3d Cir. 1998). A district court does, however, hold "the authority to grant interim relief in an arbitrable dispute, provided the court properly exercises its discretion in issuing the relief" and so long as the "traditional prerequisites for such relief are satisfied." *Ortho Pharm. Corp. v. Amgen, Inc.*, 882 F.2d 806, 811, 812 (D.N.J. 1989).

### III.   DISCUSSION

At the outset, the Court notes that Plaintiffs' IFPA claim pertaining to Defendants' allegedly fraudulent New Jersey PIP insurance billing was compelled to arbitration ("Arbitrable Claim"). On the other hand, Plaintiffs' claims for fraud, unjust enrichment, RICO, and declaratory judgment pertaining to Defendants' allegedly fraudulent New York PIP insurance billing were not compelled to arbitration[2] ("Non-Arbitrable Claims").

Defendants raise two arguments in support of staying the entirety of the instant case, including the Non-Arbitrable claims, pending arbitration: (1) the statutory language of Section 3 of the FAA mandates a stay of the entirety of the case—including Non-Arbitrable Claims—when any issue is arbitrable in the case; or (2) alternatively, if this Court finds that the FAA does not mandate a stay of the Non-Arbitrable Claims when a claim is arbitrable, the Court should exercise its discretion in staying the case. (*See* Defs.' Moving Br. 12, ECF No. 106-1.) In support of a Discretionary Stay, Defendants argue that "[t]his is a textbook case where the [A]rbitrable [C]laim[] dominate[s] the issues in the [N]on-[A]rbitrable [C]laims, the [A]rbitrable [C]laim[] [is]

---

[2] Defendants never made any motion to compel arbitration of these claims in Plaintiffs' Amended Complaint. (Pls.' Opp'n Br. 4, ECF No. 107.) Nor do Defendants argue that these claims are arbitrable. (*See generally* Defs.' Moving Br.)

factually intertwined with [N]on-[A]rbitrable [C]laims, and arbitration of claims will affect or resolve the [N]on-[A]rbitrable [C]laims through preclusion doctrines." (*Id.*)

In response, Plaintiffs argue that Section 3 of the FAA does not mandate a stay of Plaintiffs' Non-Arbitrable Claims. (Pls.' Opp'n Br. 6-12.) Plaintiffs do, however, argue that a stay of their Non-Arbitrable Claims is instead discretionary, but the circumstances here do not warrant such a stay. (*Id.* at 12-20.) Plaintiffs further argue, in the alternative, that to the extent this Court finds that a—mandatory or discretionary—stay is warranted, they should be given the opportunity to dismiss their Arbitrable Claim so that their Non-Arbitrable Claims could proceed. (*Id.* at 20.)

In essence, solely before the Court is whether Section 3 of the FAA mandates a stay of the entirety of the case.

### A.   Defendants' Request to Stay Pending Arbitration

For the reasons outlined below, the Court finds that, under the circumstances, Section 3 mandates a stay of Plaintiffs' Non-Arbitrable Claims pending arbitration of the Arbitrable Claim.

Staying an action, with arbitrable and non-arbitrable claims, pending arbitration of the arbitrable claims, generally occurs through two different avenues, either: (1) a mandatory stay under Section 3 of the FAA ("Section 3 Mandatory Stay") or (2) a stay that is within the district court's inherent discretion ("Discretionary Stay"). Because the circumstances that warrant each stay are different, the Court will discuss each separately.

The Court begins with the Section 3 Mandatory Stay. Section 3 of the FAA provides that "issues within the scope of an arbitration agreement shall be referred to arbitration, and that trial *must be* stayed pending arbitration of those issues." *loanDepot.com v. Crosscountry Mortg., Inc.*,

7

No. 18-12091, 2019 WL 2613265, at *8 (D.N.J. June 24, 2019) (emphasis added) (citing 9 U.S.C. § 3). That is,

> [i]f any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration . . . , the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceedings is referable to arbitration under such agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the application for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3.

"[I]n order for a party to be . . . subject [to a Section 3 Mandatory Stay], that party must have committed itself to arbitrate one or more issues in [the] suit." *Mendez v. Puerto Rican Int'l Cos.*, 553 F.3d 709, 715 (3d Cir. 2009). Section 3 of the FAA, however, does not "mandate curtailment of the litigation rights of anyone who has not agreed to arbitrate any of the issues before the court." *Id.* at 711. Stated differently, in a suit where some parties have agreed to arbitrate their claims and others have not agreed to arbitrate their claims, a Section 3 Mandatory Stay does not apply to the latter parties. *See id.* That said, the Third Circuit has declined to impose a Section 3 Mandatory Stay to the entirety of an action involving multiple parties, some of whom agreed to arbitration on issues, whereas others have not. *See id.* at 712 (affirming a district court's decision to stay a case pending arbitration as to plaintiffs who had entered into arbitration agreements but declining to stay the case as to plaintiffs who had not entered into arbitration agreements). The Third Circuit, however, has not expressly ruled on whether a Section 3 Mandatory Stay applies in a case where all parties are subject to the same arbitrable issue but also have related non-arbitrable issues. Notwithstanding this, the Third Circuit has recognized that "Section 3 can reasonably be read to speak to situations in which the 'suit or proceeding' involves a non-arbitrable 'issue' between the parties as well as the arbitrable 'one.'" *Id.*

8

Next up is the Discretionary Stay. If a Section 3 Mandatory Stay does not apply, the Court, in its discretion, may stay the entirety of the matter pending arbitration of the arbitrable claim. *Id.* (explaining that even where Section 3 does not mandate a stay of proceedings, a district court has its own inherent discretion, separate from the FAA, to stay litigation among non-arbitrating parties pending the outcome of the arbitration); *see also Neal v. Asta Funding, Inc.*, No. 13-3438, 2014 WL 131770, at *4 (D.N.J. Jan. 6, 2014) ("[A] district court also possesses the inherent discretion to control its docket. As a component of that discretion, the court has the inherent power to stay its own proceedings." (citing *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 21)). To that end, "a stay of court proceedings pending arbitration is a remedy that . . . 'does not require statutory authority.'" *loanDepot.com*, 2019 WL 2613265, at *8 n.9 (quoting *Merritt-Chapman & Scott Corp. v. Pa. Turnpike Comm'n*, 387 F.2d 768, 773 (3d Cir. 1967)).

Determining whether a Discretionary Stay is appropriate requires the Court to weigh the parties' competing interests and balance their relative hardships. *Landis v. N. Am. Co.*, 299 U.S. 248, 254-55 (1936) (citing *Kan. City S. R. Co. v. United States*, 282 U.S. 760, 763 (1931)). This analysis is informed by several factors, including: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and a trial date has been set." *Eagle View Tech., Inc. v. Xactware Sols., Inc.*, No. 15-7025, 2016 WL 7165695, at *3 (D.N.J. Dec. 7, 2016) (quoting *Depomed Inc. v. Purdue Pharma L.P.*, No. 13-571, 2014 WL 3729349, at *2 (D.N.J. July 25, 2014)). The burden falls on the party requesting a stay of proceedings to "make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

With these two different avenues in mind, the Third Circuit recently provided further guidance on determining when a Section 3 Mandatory Stay shall be imposed and when a Discretionary Stay may be imposed. *See Coleman v. Sys. One Holdings, LLC*, 117 F.4th 97, 103 (3d Cir. 2024).[3] In *Coleman*, the Third Circuit addressed what it meant to take an appeal from a refusal to stay under Section 3 of the FAA.[4] *Id.* at 102-03. In its discussion, the court addressed the difference between a Section 3 Mandatory Stay and a Discretionary Stay by explaining that,

> a "mandatory stay pending arbitration under Section 3 of the FAA" *applies only* to a "party [that has] committed itself to arbitrate one or more issues in suit," *Mendez*, 553 F.3d at 715, while a "stay [of] litigation among the non-arbitrating parties pending the outcome of the arbitration" is instead "a matter of [the district court's] discretion to control its docket," *Moses*, 460 U.S. at 20 n.23. A refusal to stay limited discovery into arbitrability would be immediately appealable only if such a stay would have arisen under [S]ection 3, had it been issued.

*Coleman*, 117 F.4th at 102 (emphasis added and citations shortened). The court further explained that under Section 3 to stay the trial of "'the action' is understood to refer back to the 'suit or proceeding . . . upon any issue referable to arbitration.'" *Id.* at 103. The court also explained that

---

[3] The Court briefly notes that *Coleman* was issued after Defendants' Motion was fully briefed. In turn, Defendants filed a supplemental submission to apprise the Court that *Coleman* bears on the issues in the Motion. (ECF No. 110.)

[4] The Court, however, is cognizant that the differentiation between a Section 3 Mandatory Stay and Discretionary Stay was not the precise issue before the Third Circuit in *Coleman* but finds that its discussion shines light on the issue in the instant case. *See generally Coleman*, 117 F.4th at 102. Specifically, in *Coleman*, the issue was:

> whether the [Third Circuit] ha[d appellate] jurisdiction over an interlocutory appeal . . . from a district court order that require[d] the parties to conduct limited discovery into the arbitrability of the claims . . ., but that le[ft the] pending motion to compel arbitration and to stay litigation rather than denying it.

*Id.* at 99.

when Section 3 of the FAA requires the district court to "stay the trial of the action," it refers to the substantive issues in the case and not to the antecedent and collateral issue of arbitrability. *See id.* at 103. In other words, a Section 3 Mandatory Stay does not apply when the issue referred to arbitration is whether a given issue is arbitrable. *See id.*

Here, the Court finds that the Section 3 Mandatory Stay applies. Plaintiffs "have committed [themselves] to arbitrate one or more issues in [the] suit." *Mendez*, 553 F.3d at 715. The issues are undoubtedly substantive ones, not the mere antecedent and collateral issue of whether an issue is arbitrable.[5] *Coleman*, 117 F.4th at 102 (explaining that for the mandatory stay under Section 3 of the FAA to apply, one or more issues must be substantive).

Indeed, the factual allegations underlying Plaintiffs' Non-Arbitrable Claims are based on the same allegations as Plaintiffs' Arbitrable Claim—Defendants billed for PIP claims where the medical procedures were not medically necessary or were never performed, where the providers were engaged in kickback or self-referral schemes, or where a medical practice provided the procedures with an improper corporate structure. (*See generally* Am. Compl. Exs. 1, 2, 3.) That said, the issues to be decided to adjudicate the Arbitrable Claim are the same as those to be decided to adjudicate the Non-Arbitrable Claims. That is, to adjudicate Plaintiffs' Arbitrable Claim, arbitration will determine whether Defendants were engaged in kickback or self-referral schemes or performed procedures that were improperly structured, as well as whether Defendants were

---

[5] In its opposition brief, Plaintiffs cite to *loanDepot.com*, 2019 WL 2613265, at *8 to support the proposition that the decision to stay is discretionary when some but not all issues are subject to arbitration. (Pls.' Opp'n Br. 1.) That case, however, is inapposite. It dealt with multiple defendants who did not "have arbitration agreements with the plaintiff that would entitle them to a stay." *loanDepot.com*, 2019 WL 2613265, at *9. Even further, the claims were referred to the arbitrator for the purpose of determining arbitrability. *Id.* The Third Circuit, however, has explained that the "stay of the action" refers to the substantive issues in the case and not, as in *loanDepot.com*, antecedent and collateral issues of arbitrability. *Coleman*, 117 F.4th at 103.

engaged in a practice of performing medically unnecessary procedures or not performing them at all. (Am. Compl. ¶ 409). These are precisely the issues that underpin Plaintiffs' Non-Arbitrable Claims. (*See, e.g., id.* ¶¶ 406, 414, 422, 428, 442, 449, 457, 463, 470, 484). As such, because Plaintiffs have committed themselves to arbitrate issues in the instant action and the issues are substantive ones, the Court finds that a Section 3 Mandatory Stay applies. The Court, accordingly, stays Plaintiffs' Non-Arbitrable Claims pending arbitration of the Arbitrable Claim.[6]

### B. Plaintiffs' Request to Dismiss Arbitrable Claim

As the Court has stayed the action pending arbitration, the Court now considers Plaintiffs' alternative argument—to be permitted to dismiss their Arbitrable Claim.

To permit Plaintiffs to now dismiss their Arbitrable Claim after the Third Circuit directed this Court to compel arbitration of that claim would be in direct conflict with the Third Circuit's mandate. (ECF No. 101 at 2 ("The District Court shall compel the [Plaintiffs'] IFPA claim[] to be arbitrated.").) Plaintiffs, however, seemingly ignore that "a [District Court] has no power or

---

[6] Even if this were a case where the Court was not subject to a Section 3 Mandatory Stay, the Court would still, in its discretion, stay the litigation pending the outcome of arbitration. *See Neal*, 2014 WL 131770, at *3 (citing *Crawford v. W. Jersey Health Sys. (Vorhees Div.)*, 847 F. Supp. 1232, 1240 (D.N.J. 1994) ("When the parties and issues significantly overlap between a court proceeding and an arbitration, a court may stay the entire court action."). The Court finds that it would be appropriate given the overlapping factual and legal issues governing the claim, the balance of the parties' relative hardships and prejudice, and the current stage of litigation. First, the factual allegations of the underlying PIP claims overlap—New Jersey PIP claims, which are arbitrable, far exceed the underlying New York PIP claims, which are non-arbitrable, by approximately a factor of eight-to-one. *See Gov't Emps. Ins. Co. v. Mian*, No. 22-233, 2024 WL 2057294, at *4-5 (D.N.J. May 8, 2024) (staying case where the arbitrable claims predominated the non-arbitrable claims because the PIP claims had a six-to-one ratio). Second, the Non-Arbitrable Claims share many of the same factual and legal issues with the Arbitrable Claim. Lastly, the Court is not persuaded that imposing a stay on the Non-Arbitrable Claims would be unduly prejudicial to Plaintiffs. Rather, the Court finds that adjudication of the Arbitrable Claim "will, at the very least, advance key issues affecting this matter, if not resolve them completely." *DiValerio v. Best Care Lab'y, LLC*, No. 20-17268, 2022 WL 20679837, at *2 (D.N.J. Mar. 28, 2022).

authority to deviate from the mandate issued by [the Third Circuit]." *United States v. Kennedy*, 682 F.3d 244, 252 (3d Cir. 2012) (collecting cases).

Even if the Third Circuit did not mandate this Court to compel arbitration of the IFPA claim, Plaintiffs have not cited any rule or case law that would permit them to circumvent Section 3 of the FAA by voluntarily dismissing their Arbitrable Claim to allow their Non-Arbitrable Claims to proceed.[7] Rather, Plaintiffs cite to Federal Rule of Civil Procedure[8] 41(a), which governs voluntary dismissals. (Pls.' Opp'n Br. 11 n.3.) Specifically, Rule 41(a)(1)(A) permits the dismissal of an "action" in a scenario where the opposing party has not answered, moved for summary judgment, or all parties who have appeared signed a stipulation of dismissal. *See* Fed. R. Civ. P. 41(a)(1)(A)(i-ii). Here, Defendants have answered, and all appearing parties have not filed a stipulation of dismissal; therefore, Rule 41(a)(1)(A) is inapplicable. As such, for these reasons, Plaintiffs' request for leave to amend the complaint is denied.

## IV.  CONCLUSION

For the above reasons, the Court grants Defendants' Motion to Stay Pending Arbitration. The Court will issue an order consistent with this Memorandum Opinion.

/s/ Michael A. Shipp<br>
MICHAEL A. SHIPP<br>
UNITED STATES DISTRICT JUDGE

---

[7] Plaintiffs further ignore that "[w]hen a movant sufficiently establishes that a claim is subject to a valid arbitration agreement, district courts have no discretion and must send it to arbitration." *Mount Prospect*, 98 F.4th at 472 (explaining that the district court should not have granted plaintiffs leave to file an amended complaint after finding that a claim was subject to a valid arbitration agreement).

[8] Unless otherwise noted, all references to "Rule" or "Rules" hereinafter refer to the Federal Rules of Civil Procedure.